# In the United States Court of Federal Claims

No. 18-178C

(E-Filed: April 5, 2019; Re-issued: October 22, 2019)[1]

| | |
|---|---|
| BGT HOLDINGS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Motion to Dismiss; RCFC 12(b)(6); Equitable Adjustment; Breach of Contract; Breach of Implied Duty of Good Faith and Fair Dealing; 48 C.F.R. § 52.245-1 (2012). |

Milton C. Johns, Tysons, VA, for plaintiff.

Borislav Kushnir, Trial Attorney, with whom were Chad A. Readler, Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director, Elizabeth M. Hosford, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

CAMPBELL-SMITH, Judge.

On August 17, 2018, plaintiff BGT Holdings, LLC (BGT), filed its first amended complaint in which it alleges that defendant breached a contract under which plaintiff was to provide a gas turbine generator set to the United States Navy. See ECF No. 10. Defendant has moved to partially dismiss plaintiff's amended complaint, pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC). See ECF No. 13. Also before the court are plaintiff's response to defendant's motion to dismiss, ECF

---

[1]      On October 22, 2019, the court entered an order correcting, by erratum, the legal standards (Section II) in this opinion. The court hereby re-issues this opinion with the corrected legal standards.

No. 14, and defendant's reply in support of its motion, ECF No. 15.   For the following reasons, defendant's motion for partial dismissal is **GRANTED**.

I.      Background

On October 27, 2014, the Navy awarded contract number N65540-15-C-0001 to BGT under which plaintiff was to provide a "stand-alone, complete outdoor-rated air cooled dual fuel LM2500 Gas Turbine Generator Set (GTGS) using GFE" (Government Furnished Equipment) to the Navy "at their site in Philadelphia, Pennsylvania."  ECF No. 10 at 2.

Under the terms of the contract, the Navy was obligated to provide certain equipment to plaintiff for use on the project.  The relevant contract language reads as follows:

> **4.3  Government Furnished Equipment (GFE).**  Listed below is the GFE to be provided to the Contractor for use in assembling the GTGS:
>
> 1.      Liquid fuel LM2500PC Gas Turbine engine and power turbine
>
> 2.      Gas Turbine enclosure with base, engine mounts and miscellaneous hardware (List provided in Appendix E)
>
> 3.      Engine inlet bellmount, water wash nozzles & plenum with flexible interface connection
>
> 4.      Exhaust diffuser & collector with flexible interface connection
>
> 5.      Engine High Speed power output flexible coupling
>
> 6.      Controls Option two (2) GFE Controller (MicroNet Plus)

ECF No. 10-1 at 23.  Plaintiff acknowledges that the Navy complied with these requirements "[w]ith the exception of the exhaust collector and engine mounts."  ECF No. 10 at 3.

The contract incorporated a long list of provisions from the Federal Acquisition Regulation (FAR), including section 52.245-1, Government Property.  See ECF No. 10-1 at 45.  That section reads, in relevant part:

> (d)     Government-furnished property.

. . .

(3)(i)   The Contracting Officer may by written notice, at any
time—

(A)   Increase or decrease the amount of Government-
furnished property under this contract;

(B)   Substitute other Government-furnished property
for the property previously furnished, to be
furnished, or to be acquired by the Contractor for
the Government under this contract; or

(C)   Withdraw authority to use property.

(ii)   Upon completion of any action(s) under paragraph
(d)(3)(i) of this clause, and the Contractor's timely
written request, the Contracting Officer shall consider
an equitable adjustment to the contract.

. . .

(i)   <u>Equitable adjustment</u>. Equitable adjustments under this clause shall
be made in accordance with the procedures of the Changes clause.
However, the Government shall not be liable for breach of contract
for the following:

. . .

(3)   An increase, decrease, or substitution of Government-furnished
property.

48 C.F.R. § 52.245-1(d)(3)(i)-(ii) & (i)(3) (2012).

With regard to changes that may be made to the contract terms, the contract
provides as follows:

(a)   Except as specified in paragraph (b) below, no order, statement, or
conduct of Government personnel who visit the Contractor's facilities or in
any other manner communicates with Contractor personnel during the
performance of this contract shall constitute a change under the "Changes"
clause of this contract.

3

(b)     The Contractor shall not comply with any order, direction or request of Government personnel unless it is issued in writing and signed by the Contracting Officer, or is pursuant to specific authority otherwise included as a part of this contract.

(c)     The Contracting Officer is the only person authorized to approve changes in any of the requirements of this contract and notwithstanding provisions contained elsewhere in this contract, the said authority remains solely the Contracting Officer's.  In the event the [C]ontractor effects any change at the direction of any person other than the Contracting Officer, the change will be considered to have been made without authority and no adjustment will be made in the contract price to cover any increase in charges incurred as a result thereof.  The address and telephone number of the Contracting Officer is:

John Stefano
Naval Surface Warfare Center Carderock Division
5001 South Broad Street
Philadelphia, PA 19112-1403
John.stefano@navy.mil
(215) 897-8437

ECF No. 10-1 at 55.

Plaintiff alleges that "[t]he Navy informed BGT that it would not release the exhaust collector and the engine mounts, unless BGT provided the Navy with the cost savings in return, that is, a decrease in the total amount of the firm fixed price contract." ECF No. 10 at 4.  Plaintiff further alleges that it was instructed to address future correspondence to "'Carolyn McCloskey and Suzanne Onesti directly.  They will be the conduits to the larger Navy team.  This is to ensure the right people are taking Actions.'" Id. (quoting an uncited source).  "Ms. Onesti also emphasized the importance of centralized communication, telling BGT that as the Procurements Manager, she was the contact for 'questions about the SOW or requirements requiring a response from the government, or if you need to request dimensions, drawings or specs, your email needs to be address[ed] to Carolyn or me, or preferably both." Id. at 4-5 (quoting an uncited source).  According to plaintiff "it was the usual course of performance that any decision by the Contracting Officer was conveyed to BGT by either Ms. Onesti or Ms. McCloskey." Id. at 5.

Plaintiff also states as follows:  "As the Contracting Officer for the GTGS program, Mr. Stefano was the person who communicated his decision to BGT no later than December 2, 2014 that absent cost savings, on behalf of the Navy, he would not

release the exhaust collector and engine mounts to it." Id.  Plaintiff does not allege that this decision was communicated in writing and signed by the contracting officer.

In an email dated January 16, 2015, plaintiff asked Ms. Onesti to confirm "that there is no charge" for the Navy's exhaust collector. Id.  Ms. Onesti replied, as follows:

> For the Exhaust Collector, the action is for BGT to identify the costs from your proposal that were directly associated with buying or manufacturing your own Exhaust equipment.  That cost would then be deducted from the value of the contract or applied toward future options if BGT were to use the GFE exhaust collector.  So you actually don't need cost data from us.  If the cost savings are not significant enough, our Program Manager may decide instead to have you procure your own exhaust collector components. (emphasis added).

Id.

Several days later, on January 23, 2015, plaintiff sent an email to Ms. Onesti asking:  "As we progress to the final stages of the GA, we now need the engine mounts and flexible coupling that the Navy is furnishing to complete those drawings. When can we arrange for pickup of those items?" Id.  In response, Ms. Onesti wrote, on January 26, 2015:  "Since BGT is developing their own turbine module, the mounts for the engine are within the scope of the enclosure design.  The mounts are included in the GFE turbine module that was not utilized by BGT." Id.

In late January 2015, after the Navy and plaintiff failed to agree on "cost savings" related to the GFE, "the Navy informed BGT that it had reutilized the GFE exhaust collector and engine mounts as fleet assets, and they were no longer available to BGT through the contract." Id. at 5-6.  Plaintiff acknowledges that the contracting officer, Mr. John Stefano, "had the authority to 'decrease the amount of Government-furnished property under this contract.'" Id. at 6 (citing FAR 52.245-1(d)(3)(i)(A)).  Plaintiff alleges that Mr. Stefano was the only person authorized to make such a decision, see id., but states that Ms. Onesti, not Mr. Stefano, communicated the decision to plaintiff, see id. at 9.

In early 2015, plaintiff provided several progress reports to the Navy that included discussion of the "issue of cost savings in exchange for the use of the exhaust collector and engine mounts." Id. at 7.  Plaintiff alleges that the contracting officer received these reports, and as such, "knew or should have known that BGT was confronted with the decision of whether to use the Navy's GFE and provide it with a 'cost savings to the project,' or procure its own equipment in place of the GFE." Id.

In April 2015, because the Navy had refused to provide the GFE, plaintiff "purchased both an exhaust collector and engine mounts in the commercial market," which were "identical" to the equipment that would have been provided by the Navy under the contract. Id. at 6. Plaintiff purchased the equipment because it "was contractually obligated to manufacture a Gas Turbine Generator Set," and it is impossible to do so "without incorporating both an exhaust collector and engine mounts." Id.

The Navy accepted delivery of the GTGS from plaintiff, and made its final payment on the contract in December 2016. See id. at 10. Plaintiff had submitted a claim to the contracting officer including a request for an equitable adjustment in the amount of $610,775 as a result of the Navy's GFE decision, on November 1, 2016. See id. On May 30, 2017, the contracting officer denied plaintiff's claim as to the GFE. See id.

In its amended complaint, plaintiff alleges five counts: (1) "Count I. Constructive Change—Equitable Adjustment for the Cost of Exhaust Collector and Engine Mounts," id. at 3-11; (2) "Count II. Breach of Contract (Failure to provide GFE)," id. at 11; (3) "Count III. Breach of Duty of Good Faith and Fair Dealing (Failure to provide GFE)," id. at 11-12; (4) "Count IV. Constructive Change—Equitable Adjustment—Increased Cost of Water Treatment Plant," id. at 12-14; and (5) "Count V. Equitable Adjustment—Costs Resulting from Delay Within the Control of the Government," id. at 14-16. In its motion for partial dismissal, ECF No. 13, defendant moves to dismiss the first three of these counts for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(6).[2]

II.    Legal Standards

When considering a motion to dismiss brought under RCFC 12(b)(6), the court "must presume that the facts are as alleged in the complaint, and make all reasonable inferences in favor of the plaintiff." Cary v. United States, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (citing Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)). It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

[2]    Plaintiff alleges additional facts relevant to portions of the amended complaint not at issue in defendant's motion for partial dismissal. See ECF No. 10 at 12-16 (detailing facts relevant to Counts IV and V). As such, the court has not recited those facts in this opinion.

plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

III.    Analysis

A.    Plaintiff Is Not Entitled to Equitable Adjustment

In the first count of the amended complaint, plaintiff seeks an equitable adjustment in the amount of the expense it incurred to purchase the exhaust collector and engine mounts that defendant did not provide.  See ECF No. 10 at 3-11.  "Equitable adjustments are corrective measures that make a contractor whole when the Government modifies a contract." Int'l Data Prods. Corp. v. United States, 492 F.3d 1317, 1325 (Fed. Cir. 2007) (citing Ets-Hokin Corp. v. United States, 190 Ct. Cl. 668, 674 (1970); see also Aydin Corp. v. Widnall, 61 F.3d 1571, 1577 (Fed. Cir. 1995) ("Where it requires a constructive change in a contract, the Government must fairly compensate the contractor for the costs of the change.").  In order to be effective, such modifications must be made by an agent with actual authority to bind the government.  See Winter v. Cath-dr/balti, Joint Venture, 497 F.3d 1339, 1344 (Fed. Cir. 2007) ("Where a party contracts with the government, apparent authority of the government's agent to modify the contract is not sufficient; an agent must have actual authority to bind the government.") (citing Trauma Serv. Grp. v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997)).

The contract at issue incorporates the "Government Property" FAR provision.  See ECF No. 10-1 at 45 (incorporating 48 C.F.R. § 52.245-1).  That provision specifies that "equitable adjustments under this clause shall be made in accordance with the procedures of the Changes clause" of the contract.  48 C.F.R. § 52.245-1(i).  The changes clause, in turn, provides:

(a)    Except as specified in paragraph (b) below, no order, statement, or conduct of Government personnel who visit the Contractor's facilities or in any other manner communicates with Contractor personnel during the performance of this contract shall constitute a change under the "Changes" clause of this contract.

(b)    The Contractor shall not comply with any order, direction or request of Government personnel unless it is issued in writing and signed by the Contracting Officer, or is pursuant to specific authority otherwise included as a part of this contract.

(c)    The Contracting Officer is the only person authorized to approve changes in any of the requirements of this contract and notwithstanding provisions contained elsewhere in this contract, the said authority remains

solely the Contracting Officer's.  In the event the [C]ontractor effects any change at the direction of any person other than the Contracting Officer, the change will be considered to have been made without authority and no adjustment will be made in the contract price to cover any increase in charges incurred as a result thereof.  The address and telephone number of the Contracting Officer is:

John Stefano
Naval Surface Warfare Center Carderock Division
5001 South Broad Street
Philadelphia, PA 19112-1403
John.stefano@navy.mil
(215) 897-8437

ECF No. 10-1 at 55.  This provision establishes Mr. Stefano as the agent with actual authority to change the contract on defendant's behalf, so long as any change is in writing and signed.

As an initial matter, plaintiff has not stated a claim that demonstrates its compliance with this contract term.  Plaintiff makes much of its allegation that the contracting officer "made the decision to withdraw the GFE from the Contract."  ECF No. 14 at 14; see also ECF No. 10 at 9.  In support of this assertion, plaintiff repeatedly cites to seven paragraphs of its amended complaint, which read, as follows:

23.    As the Contracting Officer for the GTGS program, Mr. Stefano was the person who communicated his decision to BGT no later than December 2, 2014 that absent cost savings, on behalf of the Navy, he would not release the exhaust collector and engine mounts to it.

. . .

25.    On January 16, 2015, Ms. Onesti replied:

For the Exhaust Collector, the action is for BGT to identify the costs from your proposal that were directly associated with buying or manufacturing your own Exhaust equipment.  That cost would then be deducted from the value of the contract or applied towards future options if BGT were to use the GFE exhaust collector.  So you actually don't need cost data from us.  If the cost savings are not significant enough, or Program Manager may decide instead to have you procure your own exhaust collector components. (emphasis added).

8

. . .

28.     In late January 2015, after the Navy and BGT were unable to come to agreement on "cost savings" in exchange for the GFE, the Navy informed BGT that it had reutilized the GFE exhaust collector and engine mounts as fleet assets, and they were no longer available to BGT through the contract.

29.     As the Contracting Officer, Mr. Stefano had the authority to "decrease the amount of Government-furnished property under this contract." Contract p. 44 (incorporating FAR 52.245-1(d)(3)(i)(A)).  Put another way, every item of GFE listed in the Contract, including the exhaust collector and engine mounts, was under the control of Mr. Stefano for use only in this Contract. In order for the Navy to reutilize any GFE for a purpose other than Contract N65540-15-C-0001, Mr. Stefano's permission was necessary.

. . .

39.     Mr. Stefano made the decision to decrease the amount of GFE in the contract no later than when he permitted the exhaust collector and engine mounts to be withdrawn from the contract and reutilized as fleet assets.

40.     Within the GTGS program, Mr. Stefano was also referred to as the "Program Manager."

41.     In his position as Contracting Officer, Mr. Stefano directed and controlled the actions of both Ms. Onesti and Ms. McCloskey within the GTGS program.

ECF No. 10 at 5-7.

Nowhere in these allegations, or elsewhere in its amended complaint, does plaintiff allege that the change to the contract regarding GFE was "in writing and signed by the Contracting Officer," as required by the express terms of the contract.  ECF No. 10-1 at 55.  The contract also provides that absent compliance with the foregoing requirement, "the change will be considered to have been made without authority and no adjustment will be made in the contract price to cover any increase in charges incurred as a result thereof."  Id.  Plaintiff is bound by the terms of the contract, and cannot state a claim for equitable adjustment, unless it presents a viable defense to the contract.  See Forest Envtl. Servs. Co. v. United States, 5 Cl. Ct. 774, 777 (1984) ("It is well settled that a party to a contract will be bound by the terms thereof, unless there exists some defense to the contract, i.e., fraud, duress, or unless the contract is found to be unreasonable,

unconscionable or contrary to public policy, or it produces an egregious, unfair or unreasonable result.").

Plaintiff does not present a defense to the enforceability of the contract as a whole, but instead claims that it is entitled to an equitable adjustment for the cost of the exhaust collector and engine mounts, even absent compliance with the change provision in the contract, on the theories of ratification and waiver.  With regard to ratification, plaintiff alleges that "Contracting Officer Stefano ratified Ms. Onesti's decision to decrease the GFE under the contract when he permitted the GFE exhaust collector and engine mounts to be withdrawn from the contract and reutilized as fleet assets."  See ECF No. 10 at 8.  In addition, after citing caselaw related to the issue waiver, plaintiff alleges that:

> In giving permission for GFE that was included in the contract to be withdrawn from the contract and instead reutilized for other Navy purposes, without issuing a formal written change order, Mr. Stefano intended to make a change to the contract without relying on its right to do so only by written notice.

Id.  Defendant disagrees, and argues that the theories of ratification and waiver are unavailable to plaintiff.

Defendant contends that plaintiff has contracted away its ability to make an argument for ratification in these circumstances.  Specifically, defendant asserts that plaintiff "agreed 'not [to] comply with any order, direction or request of Government personnel unless it is issued in writing and signed by the Contracting Officer,'" and that "'any change at the direction of any person other than the Contracting Officer . . . will be considered to have been made without authority.'"  ECF No. 13 at 16 (quoting ECF No. 10-1 at 55) (emphasis added by defendant).  This contract language, according to defendant, is fundamentally at odds with the theory of ratification because plaintiff "agreed that the contracting officer must personally issue and sign a written directive before such a directive becomes binding on the Government."  Id.

Defendant makes a similar argument with respect to plaintiff's theory that defendant waived the right to enforce the requirements of the changes clause:

> Because Mr. Stefano's approval was required for the withdrawal of GFE, and because the alleged withdrawal occurred without a written directive from him, BGT claims that Mr. Stefano must have intended to modify the Contract's GFE provision without a written directive.  In essence, BGT argues that contract modification by an unauthorized agent constitutes a presumptive waiver precisely because someone else had sole authority to make the modification.

Id. (citations omitted).  Allowing a waiver theory under such circumstances, in defendant's view, would "nullify the well-settled principle that only Government agents with authority can bind the Government."  Id.  And following this theory to its logical conclusion, "if permission by authorized Government personnel could be assumed whenever unauthorized personnel take action, the actions of unauthorized personnel would always bind the Government." Id. at 17.

 In order to effectively waive a right to which a party would otherwise be entitled, it must do so "knowingly and voluntarily." Minesen Co. v. McHugh, 671 F.3d 1332, 1340 (Fed. Cir. 2012).  Plaintiff acknowledges as much in its response, stating that "[w]aiver requires only that the party waiving [a] right do so 'voluntarily' and 'knowingly' based on the facts of the case."  See ECF No. 14 at 14 (quoting Seaboard Lumber Co. v. United States, 903 F.2d 1560, 1563 (Fed. Cir. 1990)).  Plaintiff claims it did not knowingly or intentionally relinquish its right to assert the defenses of ratification and waiver, and therefore, the contract language should not be read to have that effect. See ECF No. 14 at 12-14.  Plaintiff also argues that "[n]othing in the Contract at issue in this case 'spell[s] out' legal theories precluded by contract, and BGT certainly does argue that it never waived such rights."  Id. (quoting an uncited source).

It strains credulity, however, for plaintiff to claim that it was unaware that the specific contract language at issue here precludes its arguments relating to ratification and waiver.  As noted above, the changes clause in the contract states that plaintiff "shall not comply with any order, direction or request" from anyone other than the contracting officer, and puts plaintiff on notice that if "the contractor effects any change at the direction of any person other than the Contracting Officer, the change will be considered to have been made with no authority and no adjustment will be made in the contract price to cover any increase in charges incurred as a result thereof."  ECF No. 10-1 at 55. The language of the changes clause is both unambiguous and diametrically opposed to plaintiff's theories.  Indeed, this contract provision, which plaintiff knew was part of the contract, guards against the very conduct plaintiff now seeks to justify.

In addition, plaintiff makes no allegation in its amended complaint that its decision to enter into the subject contract was not voluntary.  As such, plaintiff was contractually obligated to refrain from complying with Ms. Onesti's attempted modification, absent written and signed direction from Mr. Stefano.  Plaintiff has not alleged that it sought, much less obtained, such written consent to the GFE modification.

For these reasons, plaintiff's claim for an equitable adjustment must be dismissed.

B.      The Express Terms of the Contract Preclude Plaintiff's Claim for Breach
        of Contract

In the second count of the amended complaint, plaintiff alleges that defendant breached its contractual duties in two respects:  (1) by failing to "provide the GFE to Plaintiff according to the plain terms of the Contract," and (2) by refusing to allow an equitable adjustment for the undelivered GFE.  ECF No. 10 at 11.  Neither of these claims is valid.

First, for the reasons explained above, plaintiff's claim that it was entitled to an equitable adjustment is unfounded.  As such, defendant could not have breached the contract by rejecting plaintiff's request.  And second, even assuming that an authorized government agent modified the contract by declining to provide the exhaust collector and engine mounts, plaintiff's claim that such a modification breached the contract is explicitly barred by its terms.

The contract incorporates FAR section 52.245-1, titled "Government Property," see ECF No. 10-1 at 45, which reads, in relevant part:

(i)     Equitable adjustment. Equitable adjustments under this clause shall
        be made in accordance with the procedures of the Changes clause.
        However, the Government shall not be liable for breach of contract
        for the following:

        . . .

        (3)     An increase, decrease, or substitution of Government-furnished
                property.

48 C.F.R. § 52.245-1(i)(3) (emphasis added).

Clauses that limit the government's liability have not uniformly been enforced in all circumstances.  Of particular concern are cases in which the limitations at issue do not "disavow claims outright," but instead seek to narrow a contractor's recovery.  Blue Lake Forest Prods., Inc., v. United States, 86 Fed. Cl. 366, 380 n.21 (2009); id. at 378-79 (discussing cases in which the United States Court of Appeals for the Federal Circuit, along with this court and its predecessors, have declined to enforce clauses limiting the amount of the government's liability "where the Government's own unreasonable conduct caused a delay or suspension").

Limitations clauses have been enforced, however, when those clauses are sufficiently explicit and direct.  In Wells Brothers Co. v. United States, 254 U.S. 83

(1920), the contractor sought damages for an alleged construction delay caused by the government.  The clause limiting the government's liability stated that "no claim shall be made or allowed to the contractor for any damages which may arise out of any delay caused by the United States."  Id. at 85.  The Supreme Court of the United States upheld the provision, explaining that its language "cannot be treated as meaningless and futile and read out of the contract" and found that "its plain meaning is fatal to [Wells Brothers'] claim."  Id. at 86-87.  See also George A. Fuller Co. v. United States, 69 F. Supp. 409, 412 (Ct. Cl. 1947) (acknowledging the force of Wells Brothers with regard to cases in which the contract language at issue includes "express provisions . . . exempting the Government from liability" for delay damages); Dept. of Nat. Res. and Conservation of State of Montana v. United States, 1 Cl. Ct. 727, 734 (1983) (stating that "it is required that where the government intends to exculpate itself from liability for its breach of contract, it must manifest that intent in clear, direct and express language").

It is difficult for the court to conceive of clearer exculpatory language than the clause at issue in this case.  When it entered into the contract to provide the Navy with a GTGS, plaintiff agreed that "the Government shall not be liable for breach of contract for . . . [a]n increase, decrease, or substitution of Government-furnished property."  48 C.F.R. § 52.245-1(i)(3).  But rather than address this language or any relevant caselaw directly, plaintiff confines its response to an argument that the decision to withdraw GFE was a cardinal change, and thus, a material breach of the contract.  See ECF No. 14 at 17-18.  The court need not resolve whether the cardinal change doctrine could, in theory, apply to a case in which the government does not provide GFE as contemplated by the contract.  The materiality of any alleged breach decidedly does not affect the outcome in this case since a claim for breach of contract is not a remedy available to plaintiff.

Because the unambiguous terms of the contract clearly preclude claims for breach in the present circumstances, the second count of plaintiff's amended complaint must be dismissed.

### C.     Breach of the Implied Duty of Good Faith and Fair Dealing

Plaintiff makes a claim for breach of the implied duty of good faith and fair dealing in the third count of its amended complaint.  See ECF No. 10 at 11-12.  Plaintiff alleges that "Defendant targeted its actions specifically toward Plaintiff to drive up Plaintiff's costs to perform."  Id. at 12.  Plaintiff also claims that "Defendant specifically refused to provide the contractually required GFE to frustrate and inhibit Plaintiff's ability to complete the performance of its contractual obligations."  Id.

As the Federal Circuit has explained, the implied duty of good faith and fair dealing "imposes obligations on both contracting parties that include the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable

13

expectations of the other party regarding the fruits of the contract." <u>Centex Corp. v. United States</u>, 395 F.3d 1283, 1304 (Fed. Cir. 2005). The Federal Circuit has also held that "a party to a contract cannot use an implied duty of good faith and fair dealing to 'expand [another] party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions.'" <u>Agility Pub. Warehousing Co. KSCP v. Mattis</u>, 852 F.3d 1370, 1384-85 (Fed. Cir. 2017) (quoting <u>Metcalf Constr. Co. v. United States</u>, 742 F.3d 984, 994 (Fed. Cir. 2014)). Put another way, parties "cannot rely on the implied covenant of good faith and fair dealing to change the text of their contractual obligations." <u>Century Expl. New Orleans LLC v. United States</u>, 745 F.3d 1168, 1179 (Fed. Cir. 2014).

Here, plaintiff alleges that defendant's "refus[al] to provide the contractually required GFE" was a breach of its implied duty of good faith and fair dealing. <u>See</u> ECF No. 10 at 12. Under the terms of the contract, defendant was obligated to provide a list of GFE, including a "Gas Turbine enclosure with base, and engine mounts and miscellaneous hardware," and an "exhaust diffuser & collector with flexible interface connection." ECF No. 10-1 at 23. Plaintiff alleges that defendant did not provide either the engine mounts or the exhaust collector. <u>See</u> ECF No. 10 at 3.

Plaintiff's claim for a breach of the implied duty of good faith and fair dealing founders, however, upon consideration of FAR 52.245-1, which was incorporated by explicit reference into the contract. The contracting officer was specifically permitted, "by written notice, at any time [to] . . . [i]ncrease or decrease the amount of Government-furnished property under this contract," or to "[w]ithdraw authority to use property." 48 C.F.R. § 52.245-1(d)(3)(i)(A), (C). In addition, FAR 52.245-1 states that "the Government shall not be liable for breach of contract for . . . [a]n increase, decrease, or substitution of Government-furnished property." 48 C.F.R. § 52.245-1(i)(3).

In seeking to recover for defendant's alleged breach of its implied duty of good faith and fair dealing, plaintiff asks the court to find that defendant's alleged decision to decrease the amount of, or withdraw use of, certain GFE interfered with its contract performance in an impermissible manner. Reaching this conclusion would require the court to "change the text of [defendant's] contractual obligations," in contravention of Federal Circuit precedent. <u>Century Expl.</u>, 745 F.3d at 1179. The court accepts as true plaintiff's allegation that defendant did not provide the engine mounts or exhaust collector. But in so doing, the defendant exercised a right given to it by the express terms of the contract, and therefore could not have breached a contrary duty implied in the contract. As such, the court cannot conclude that plaintiff has sufficiently alleged a claim for defendant's breach of its implied duty of good faith and fair dealing.

IV.    Conclusion

For the foregoing reasons, defendant's motion for partial dismissal, ECF No. 13, is **GRANTED**.

Pursuant to RCFC 54(b), there being no just reason for delay, and for the reasons stated in this opinion, the clerk's office is directed to **ENTER** final judgment in favor of defendant, **DISMISSING** Counts I, II, and III of plaintiff's amended complaint, with prejudice.

Defendant is directed to **FILE** its **answer** or otherwise respond to the remaining counts, Counts IV and V, of plaintiff's amended complaint, on or before **May 6, 2019**.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge